AMBER DOE
Propia Persona
8306 #2020  WILSHIRE BLVD
LOS ANGELES, CALIFORINA 90211
424-533-4363

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Amber Doe, | ) NOTICE OF APPEAL |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Sequoia Capital Operations LLC | ) Case 2:25-cv-04734-PD |
| | ) Judge: Hon. Paul S Diamond |
| Et Al, | ) |
| | ) |
| Defendant. | ) |

# UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

Amber Doe,
Plaintiff–Appellant,

v.

Sequoia Capital; Michael Goguen; Quinn Emanuel Urquhart & Sullivan LLP; Wilson Sonsini Goodrich & Rosati; Goodwin Procter LLP; and affiliated co-conspirators, Sequoia Capital Operations LLC; Michael Goguen; Two Bear Capital, Quinn Emanuel Urquhart & Sullivan LLP; Wilson Sonsini Goodrich & Rosati; Goodwin Procter LLP; Glaser Weil LLP Kirkland & Ellis LLP, Waymaker LLP, Lenczner Slaght LLP, Paoli & Purdy LLP, The Law Offices of Rivers J. Morrell III, Herb Fox Law Offices, Marriott International, Inc., Sheraton Gateway Toronto, and Rosewood Hotels & Resorts LLC, Media & Defamation Co-Defendants, including New York Post (NYP Holdings), Vox Media, Fox Corporation, Fox News, Rupert Murdoch, Bloomberg L.P., NBCUniversal, and MSNBC and State & Federal Judicial Defendants, State Actor Defendants — including various state and federal judges, California Attorney General Rob Bonta, Governor Gavin Newsom, judicial council officials, state bar representatives, civil rights commission members, and regulatory agency personnel — are identified solely in their official capacities for purposes of injunctive and declaratory relief. Plaintiff does not seek monetary damages from any judicial officer or government official. These Defendants are named only to the extent necessary to enjoin ongoing constitutional violations and to obtain equitable redress for systemic misconduct committed under colour  of law, in violation of 42 U.S.C. §§ 1983, 1985, and 1986, the U.S. Constitution, and applicable international treaties. No claim for personal or monetary liability is asserted against any current or former government official or judge.

Defendants–Appellees.

Case No. Third Circuit docket number:

# NOTICE OF APPEAL

Notice is hereby given that Plaintiff–Appellant Amber Doe, pro se, appeals to the United States Court of Appeals for the Second Circuit from the Order entered on August 21, 2025 (ECF No. 8) by the Honorable Paul S. Diamond, United States District Judge for the Eastern District of Pennsylvania, which:

1.  Transferred this action sua sponte to the United States District Court for the Central District of California (Western Division); and

2.  Left pending motions to the discretion of the transferee court.

Appellant seeks review of this transfer order on the grounds that it constitutes bad faith, judicial refoulement, and denial of constitutional and international rights to a neutral tribunal.

Dated: August 28, 2025
Respectfully submitted,

*Amber Doe*

Amber Doe, pro se

# OPENING BRIEF

*(Second Circuit Appeal from Order of Transfer, Aug. 21, 2025)*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

Amber Doe,
Plaintiff–Appellant,

v.

Sequoia Capital Operations LLC, et al.,
Defendants–Appellees.

Appeal No. [to be assigned]
On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 2:25-cv-04734-PD (Diamond, J.)

OPENING BRIEF FOR PLAINTIFF–APPELLANT AMBER DOE

TABLE OF CONTENTS

1.  Jurisdictional Statement

2.  Issues Presented

3.  Statement of the Case

4.  Statement of Facts

5.  Summary of the Argument

6.  Argument

   ◦  I. The District Court Abused Its Discretion in Ordering Transfer Under 28 U.S.C. §§ 1404 & 1406.

   ◦  II. The Transfer Order Constitutes Judicial Refoulement in Violation of 8 U.S.C. § 1231(b)(3).

   ◦  III. The Transfer Order Violates Constitutional Due Process and ICCPR Article 14.

   ◦  IV. International Law Obligations (Refugee Convention, CAT, Palermo Protocol) Prohibit Such Transfers.

   ◦  V. Plaintiff Faces Irreparable Harm Without Appellate Relief.

7.  Conclusion

8.  Certificate of Compliance

9.   Certificate of Service

JURISDICTIONAL STATEMENT

The District Court entered its Transfer Order on August 21, 2025.
This Court has jurisdiction under 28 U.S.C. § 1291 (appeals from final decisions of district courts) and under the collateral-order doctrine, because once transfer is effectuated, appellate review is foreclosed. See *In re Nine Mile Ltd.*, 673 F.2d 242, 243–44 (8th Cir. 1982).
The Notice of Appeal was timely filed on August 28, 2025.

ISSUES PRESENTED

1.   Whether the district court erred in sua sponte transferring Plaintiff's action to the Central District of California under 28 U.S.C. §§ 1404 and 1406 despite allegations of corruption, retaliation, and persecution in that forum.

2.   Whether judicial transfers that knowingly channel trafficking survivors back to hostile jurisdictions constitute judicial refoulement, prohibited under 8 U.S.C. § 1231(b)(3) and binding treaty obligations.

3.   Whether reliance on prior California dismissals labeling Plaintiff "frivolous" or "vexatious" violated constitutional due process where such labels were products of trafficking-driven corruption.

STATEMENT OF THE CASE

Amber Doe, a trafficking survivor, filed suit in the Eastern District of Pennsylvania asserting federal claims under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §§ 1590–1595), civil RICO (18 U.S.C. § 1964), and related statutes.

On August 21, 2025, Judge Paul S. Diamond ordered sua sponte transfer to the Central District of California (Western Division), citing prior dismissals in California and suggesting venue was manufactured.

Plaintiff timely appealed, contending the transfer constitutes bad faith forum entrapment and violates statutory and treaty-based protections against refoulement.

STATEMENT OF FACTS

- Plaintiff is a survivor of sex trafficking, alleging systemic judicial corruption and retaliation.

- California courts previously declared Plaintiff "vexatious," denying access to remedies.

- Plaintiff alleges those designations were procured by traffickers, their counsel, and complicit judicial officers.

- The District Court nonetheless transferred her claims to California, ensuring automatic dismissal under those same stigmas.

- Plaintiff faces complete foreclosure of remedies, retaliatory imprisonment, and continuation of trafficking through judicial process.

SUMMARY OF ARGUMENT

The transfer order must be reversed. It is not a neutral venue decision but a judicial act of refoulement: knowingly returning a trafficking survivor's case into the very forum controlled by perpetrators.

Such an act violates:

- Domestic law (8 U.S.C. § 1231(b)(3));

- Due Process (U.S. Const. amend. V, XIV);

- International obligations (Refugee Convention, CAT, ICCPR).

Appellate relief is essential because once the case is docketed in California, dismissal will follow immediately, nullifying this Court's jurisdiction and Plaintiff's rights.

ARGUMENT

I. Abuse of Discretion Under §§ 1404 & 1406

Transfer requires consideration of convenience and interests of justice. *Atlantic Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 62 (2013). Courts must weigh plaintiff's

1

2

choice of forum, access to evidence, and fairness. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981).

3

4

Here, the District Court failed to consider Plaintiff's allegations that California courts are corrupted by traffickers, rendering transfer unjust and fundamentally unfair. This is an abuse of discretion.

5

6

II. Judicial Refoulement Under 8 U.S.C. § 1231(b)(3)

7

8

9

Section 1231(b)(3)(A) prohibits removal of individuals to jurisdictions where persecution is "more likely than not." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987).

10

11

12

Courts recognize constructive refoulement in contexts beyond deportation. See *Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004) (due process rights triggered by risk of torture upon transfer).

13

14

Transferring Plaintiff's case to California, knowing she faces retaliatory dismissal and persecution there, is the functional equivalent of unlawful removal.

15

16

III. Violation of Constitutional Due Process and ICCPR Art. 14

17

18

Due Process requires access to a neutral tribunal. *Tumey v. Ohio*, 273 U.S. 510 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

19

20

ICCPR Art. 14 guarantees impartial adjudication. The transfer to a hostile forum where Plaintiff has been declared "vexatious" denies this guarantee.

21

IV. International Law Obligations

22

23

- Refugee Convention, Art. 33: prohibits return to persecution.

24

- CAT, Art. 3: prohibits return to torture.

25

- Palermo Protocol: mandates protection of trafficking survivors.

26

27

Under *Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804), U.S. law should be construed to avoid conflict with treaty obligations.

28

V. Irreparable Harm

If transfer is not reversed, Plaintiff faces:

- Dismissal of her claims;

- Retaliatory imprisonment;

- Foreclosure of all remedies.

This constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

CONCLUSION

For the foregoing reasons, this Court should:

1. Reverse the August 21, 2025 transfer order;

2. Declare judicial refoulement unlawful under U.S. law, the Constitution, and treaties;

3. Enjoin further transfers to California or other hostile forums;

4. Remand to the Eastern District of Pennsylvania (or another neutral district) for proceedings on the merits.

Respectfully submitted,

*Amber Doe*

Amber Doe
Plaintiff–Appellant, pro se

Dated: August 28, 2025

EMERGENCY MOTION TO STAY TRANSFER PENDING APPEAL

*(Filed contemporaneously under Fed. R. App. P. 8(a)(2))*

Plaintiff–Appellant respectfully moves for an Emergency Stay of the August 20, 2025 transfer order. Without a stay, the case will be transmitted to the Central District of California, where it will be swiftly dismissed under prior "vexatious" rulings, thereby nullifying appellate jurisdiction and causing irreparable harm.

The governing factors—likelihood of success, irreparable injury, equities, and public interest—favor a stay. *Nken v. Holder*, 556 U.S. 418 (2009).

REFOULEMENT: JUDICIAL TRANSFER AS PERSECUTION

This appeal directly raises the issue of judicial refoulement: the functional equivalent of deporting an asylum-seeker back to persecutors.

- Domestic Law: 8 U.S.C. § 1231(b)(3) (withholding of removal) embodies the U.S. commitment to *non-refoulement*.

- International Law: Article 33 of the Refugee Convention; Article 3 of the Convention Against Torture; Article 14 of the ICCPR; and the Palermo Protocol prohibit returning a victim to any forum where persecution or torture is foreseeable.

- Judicial Analogy: Transfer orders knowingly sending a trafficking survivor back into a hostile and corrupted jurisdiction are the judicial equivalent of unlawful removal. See *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Khouzam v. Att'y Gen.*, 549 F.3d 235 (3d Cir. 2008).

Here, Judge Swain's transfer order (Doe v. Sequoia Capital, 25-cv-6169 (LTS)) relies explicitly on California state court stigmas ("vexatious litigant," "frivolous") imposed under the influence of traffickers and complicit judges. These are paradigmatic acts of judicial refoulement: laundering persecution through venue transfer.

Harm: Appellant faces total foreclosure of legal remedies, exposure to retaliatory imprisonment, and perpetuation of a trafficking enterprise under color of law. This constitutes irreparable injury under both domestic and international human rights norms.

RELIEF REQUESTED

Appellant respectfully requests that this Court:

1.  Stay the transfer order in case Case 1:23-cv-05881-LTS of August 20, 2025 pending resolution of this appeal;

2.  Direct the Clerk of the EASTERN DISTRICT OF PENNSYLVANIA to retain the record and refrain from transmitting it;

3.  Declare that judicial refoulement, returning a trafficking survivor's case to a corrupted forum, is unlawful under U.S. statutory law, constitutional guarantees, and binding treaty obligations;

4.  Enjoin any further orders compelling litigation in the Central District of California or other proven hostile jurisdictions;

5.  Refer this matter to the U.S. DOJ Civil Rights Division and relevant international bodies (including UN Special Rapporteurs) for protective oversight; and

6.  Grant such other and further relief as justice requires.

Dated: August 28, 2025
Respectfully submitted,

*Amber Doe*

Amber Doe, pro se

OPENING BRIEF OF PLAINTIFF–APPELLANT AMBER DOE

TABLE OF CONTENTS

1. Jurisdictional Statement

2. Issues Presented

3. Statement of the Case & Facts

4. Summary of Argument

5. Argument

   ○ I. Judicial Refoulement Violates 8 U.S.C. § 1231(b)(3) and the Non-Refoulement Principle

   ○ II. Transfer to a Known Hostile Forum Violates Constitutional Due Process and the ICCPR, Art. 14

   ○ III. International Law Obligations under the Refugee Convention and CAT Apply to Judicial Transfers

   ○ IV. Courts Have Recognized Analogous "Constructive Refoulement" and Cannot Sanction Judicial Laundering of Persecution

   ○ V. Plaintiff Faces Irreparable Harm and Denial of All Remedies Absent Relief

6. Conclusion

7. Certificate of Compliance

8. Certificate of Service

### JURISDICTIONAL STATEMENT

The District Court entered its Transfer Order on August 20, 2025 (Doe v. Sequoia Capital, No. 25-cv-6169 (LTS)). This Court has appellate jurisdiction under 28 U.S.C. § 1291. The Notice of Appeal was timely filed under Fed. R. App. P. 4(a).

### ISSUES PRESENTED

1. Whether the district court violated 8 U.S.C. § 1231(b)(3) and binding treaty obligations by transferring a trafficking survivor's claims to a forum where persecution and denial of remedies are reasonably foreseeable.

2.  Whether "judicial refoulement" — the act of returning a trafficking survivor's case into corrupted state and federal jurisdictions — constitutes a violation of constitutional due process and international human rights guarantees.

3.  Whether the district court erred in relying on prior California "vexatious litigant" stigmas, themselves products of trafficking-driven corruption, as grounds for transfer.

## STATEMENT OF THE CASE & FACTS

### A. Introduction: Plaintiff's Ordeal and Jurisdictional Foundation

1.  Plaintiff Amber Doe("Amber ") is a Canadian citizen born of American born ancestors and survivor of transnational human trafficking, systemic sexual exploitation, torture, forced labor, and severe violations of her civil, constitutional, and internationally recognized human rights.

2.  From the age of fifteen, Plaintiff was trafficked across international and U.S. state borders by organized criminal networks, including the Hells Angels, and ultimately fell under the control of Defendant MICHAEL LEWIS GOGUEN, a U.S.-based billionaire financier residing in Montana and conducting interstate and international commercial activities.

3.  The events pleaded herein give rise to claims under federal law, including but not limited to: the Trafficking Victims Protection Act (18 U.S.C. §§ 1581 et seq.), the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961-68), 42 U.S.C. § 1983, and related civil rights and constitutional violations, along with pendent claims under state and international law.

### B. Pattern of Human Trafficking and Sexual Exploitation

4.  Amber was first trafficked by a family member into the hands of the Hells Angels at age fifteen and funnelled into a high-end international sex trafficking circuit marketed as elite modelling.

5.  For years, Amber was trafficked through strip clubs, luxury properties, sporting events, and private parties in jurisdictions including the U.S. Virgin Islands, China, Japan, Guam, Puerto Rico, Florida, New York, Michigan, Arizona,

Georgia, Texas, New Jersey, Oklahoma, Alberta, Ontario, Quebec, and various European nations.

6.  After being Trafficking to Billionaire pedophiles in The US Virgin Islands She was trafficked to Texas. After arriving in Dallas, Texas, Amber was introduced to Defendant Goguen through a VIP club manager affiliated with organized crime. Goguen assumed total coercive control over her, promising safety in exchange for submission.

7.  Goguen transported Amber using aircraft and shell corporations, subjected her to forced sexual servitude, psychological domination, and coerced compliance via drugging and sexual violence. He used financial instruments and entities including Sequoia Capital expense accounts to fund this enterprise.

8.  Amber was repeatedly drugged and raped, including during a high-profile assault in Toronto, Ontario after discharge from an ICU with a head injury. Goguen used Sequoia Capital's resources to fly her there.

9.  Amber was forced by Goguen to create sham entities (e.g., Je Ne Sais Que Enterprises, LLC) to disguise her trafficking and conceal the financial transactions from Goguen's spouses and the IRS. These funds were laundered through offshore number company accounts and U.S. banks.

10. The trafficking escalated to increasingly violent sexual acts. Amber was drugged with substances such as Rohypnol, subjected to forced sodomy, degradation, and sexual torture.

C. Physical Harm and Medical Abuse

11. In 2010, Amber was diagnosed with multiple high-risk HPV strains. Goguen knowingly withheld his STI status and coerced her to continue sexual acts while infected.

12. In 2012, he caused a 7-inch anal tear requiring emergency surgery in London, UK. He paid $100,000 to suppress the incident but evaded all legal accountability.

13. Goguen intensified his psychological abuse when Amber resisted further exploitation, hiring private operatives to surveil her and allegedly attempting to solicit her murder.

D. Coerced Settlement and Legal Entrapment

14. In 2014, under coercion and duress, Amber was forced to terminate her counsel and accept representation from Sequoia capitals elite legal team including Quinn Emanuel LLP, Goodwin Procter LLP, and Wilson Sonsini LLP.

15. On May 23, 2014, Amber was coerced into signing a $40 million settlement agreement drafted by the aforementioned law firms at the Rosewood Sand Hill Hotel in California, a known site of Sequoia Capital Sex Enterprises and Goguen's trafficking operations. The agreement was executed without independent counsel or negotiation. Witnessed and Signed Before Sequoia Capitals Staff Notary.

16. Goguen then immediately braced the contact force her to endure his sexual abuse to seal the deal

17. Only one installment of $10 million was paid. Goguen defaulted, resumed retaliation, and deployed Matthew Marshall, his former security chief (now a convicted felon), to surveil and attempt to assassinate Amber .

18. Only days after the agreement was sign pedophilic serial rapist Goguen materially breached the confidentiality clause of the contract causing her further damage by disseminating her name and images.

E. Obstruction of Justice and Judicial Corruption (2016–2025)

19. Between 2016 and 2025, Amber faced systematic obstruction in U.S. courts. She was sabotaged by attorneys bribed or coerced by Sequoia Capital, Goguen and Quinn Emanuel.

20. Her San Mateo County bench trial was held in absentia while she was incapacitated after major surgery. A $14 million fraudulent judgment, fraudulent restraining order, and illegal unconstitutional gag order were drafted by Quinn Emanuel and were issued by bribed corrupt Judge Danny Chou, based on falsified evidence and perjured testimony.

21. Her appeals were circumvented. Ontario courts illegally enforced the fraudulent California judgment by issuing a Mareva injunction that illegally froze her assets and her siblings personal assets despite jurisdictional defects and lack of service.

22. Judges Barbara Conway and Cory Gilmore signed asset freezes despite acknowledging in ex parte emails with the Quinn Emanuel lawyers that Amber was not served and that they were basing this mareva injection on the falsified

addresses and fake back account numbers in Ontario, forcing her into homelessness  and leaving her with no access to critical medical treatment and a additional surgery during the COVID-19 pandemic.

## F. Federal and Interstate Sabotage

23. From 2023 to 2025, Amber filed multiple federal civil rights and trafficking lawsuits in California, New York, D.C., and Montana. All were wrongfully dismissed by biased or conflicted judges, including Maame Frimpong, Steve Kim, Laura Taylor Swain, David. O. Carter and Donald Molloy.

24. Quinn Emanuel unlawfully interfered in the Southern District of New York by submitting ex parte communications via Fedex to Chief Judge Swain of which are in evidence, resulting in the improper transfer of Amber 's case.

25. Amber 's filings were repeatedly dismissed under inapplicable doctrines such as res judicata despite no prior adjudication on the merits.

## G. Legal Fraud, Retaliation, and Vexatious Litigant Designation

26. Amber 's cross-complaints in California were sabotaged. Judges like Nico Dourbetas and Stephanie Bowick dismissed her filings, denied fee waivers, and improperly declared her a vexatious litigant at thew direction go Attorney general Rob Bonta.

27. Amber was denied representation, forced into pro se status, and then criminalized in a fraudulent contempt trial for "defaming" her trafficker. Judges Danny Chou, Elizabeth Lee, Susan Greenberg, and Nina Shapirshteyn invented the sham proceedings and presided over quasi-criminal proceedings that denied her due process and were held in absence of jurisdiction.

28. Diane Doolittle, of Quinn Emanuel, issued illegal subpoenas in closed cases without jurisdiction or service, violating Amber 's rights.

## H. Final Acts of Retaliation and Judicial Complicity

29. As recently as 2025, Amber 's filings to vacate fraudulent judgments were summarily denied without hearing by the Chief Judge of the California Supreme Court . She was subjected to ex parte hearings, surveillance, asset freezes, and denial of medical care.

30. California state bar, law enforcement and the judicial council judges refused to investigate her reports of lawyer embezzlement and judicial fraud, citing her

"vexatious" designation. Her complaints to oversight bodies disappeared from dockets and databases.

31. The Governor of California Gavin Newsom and Attorney General Rob Bonta were made aware of over 40 instances of judicial corruption yet refused to intervene.

32. After being subjected to repeated sexual exploitation and trauma, Amber sought to enforce her rights and secure safety from further abuse. In retaliation, Goguen and his legal team, including Quinn Emanuel, Goodwin Procter, and Wilson Sonsini, escalated coercive tactics including surveillance, gaslighting, and deprivation of resources. Plaintiff was deliberately isolated from legitimate legal counsel and forced to engage in proceedings managed by her abusers' attorneys, violating her rights under 18 U.S.C. § 1592 (abuse of legal process to maintain trafficking) and 18 U.S.C. § 1595. The above facts demonstrate a criminal enterprise involving transnational trafficking, judicial corruption, obstruction of justice, financial exploitation, and state complicity.

33. Quinn Emanuel, acting in coordination with Sequoia Capital and Goguen, facilitated the execution of a fraudulent "personal injury settlement agreement" in May 2014 at the Rosewood Sand Hill Hotel, a known site of trafficking and coercion used by Goguen. The agreement was signed under extreme duress, without independent counsel, and witnessed by Sequoia's in-house notary. It purported to settle Plaintiff's claims for $40 million payable in four $10 million installments, but only the first payment was made. This act constitutes contractual fraud, obstruction of justice, and enforcement of a trafficking-based contract in violation of 18 U.S.C. § 1594 and common law doctrines voiding contracts procured under duress. These facts support Plaintiff's claims under the U.S. Constitution, the TVPA, RICO, 42 U.S.C. §1983, and supplemental claims under international and foreign law. Amber Doe seeks full declaratory, injunctive, equitable, and monetary relief from this Court.

E. Systematic Attorney Sabotage and Fraudulent Proceedings

34. In the lead-up to the 2019 trial, attorneys from Quinn Emanuel arranged a trip to Las Vegas with Amber 's retained counsel, William Paoli. During this meeting, Paoli

was allegedly bribed to sabotage Plaintiff's case and failed to appear at trial, abandoning his client without cause.

35. Amber 's judicial proceedings were further obstructed by a $900-per-hour referee appointed from JAMS, former Judge Read Ambler, who continued proceedings despite Amber being physically incapacitated, sedated, and medically prohibited from attending.

36. While Plaintiff was pro se and under post-operative care, bone marrow transplant, including tungsten detoxification, orthopaedic recovery with rods and plates, seizure management, and bone marrow transplant, San Mateo Judge John Grandsaert denied a meritorious motion to continue the trial. This was a clear denial of due process in violation of the Fifth and Fourteenth Amendments and ensured Plaintiff was unrepresented and medically unfit when the fraudulent trial proceeded.

37. On the basis of fabricated testimony and falsified evidence provided by Quinn Emanuel, Judge Danny Chou entered a $14 million default judgment, an illegal gag order, and a fraudulent restraining order, all drafted by Quinn Emanuel Lawyers and issued without trial on the merits, notice, or opportunity to respond.

38. Despite appeals being pending in California appellate courts, the judgment was unlawfully enforced in Canada. The Ontario Superior Court, knowingly ignoring California law which stays judgment enforcement during appeal, executed the judgment with the assistance of Defendant lawyers and judges operating in bad faith and without lawful jurisdiction.

39. Ontario Superior Court Judges Cory Gilmore and Barbara Conway issued a Mareva injunction to freeze Amber 's assets based on fabricated evidence and undisclosed ex parte email communications with the Quinn Emanuel Lawyers.

40. Defendants Monique Jilesen and Sahar Talebi, acting through Lenczner Slaght LLP, falsified banking records, addresses, and corporate documents to fraudulently assert jurisdiction in Ontario. They reclassified Plaintiff as a "corporation" to bypass individual rights and execute asset seizure unlawfully.

41. In written correspondence, Judges Gilmore and Conway admitted Amber had not been served, but nonetheless signed freezing orders which denied Plaintiff access to medical funds, housing, and urgent surgery, forcing her into homelessness during the global COVID-19 pandemic.

42. The asset freeze extended beyond Amber , unlawfully impacting the bank accounts of her siblings and family members without notice, standing, or due process. This

action violated constitutional protections, property rights, and international human rights standards.

43. During this time, Quinn Emanuel attorneys actively intercepted and obstructed Amber 's communications with U.S. and Canadian law enforcement, subverting potential criminal investigations into human trafficking, sexual assault, and fraud.

44. Despite full knowledge of the falsified proceedings, Lenczner Slaght LLP and Quinn Emanuel appeared before the Supreme Court of Canada in bad faith, using fabricated evidence and procedural fraud. Amber is currently pursuing claims for fraud, obstruction, and conspiracy against the Canadian Crown and named individuals.

F. Systematic Attorney Sabotage and Fraudulent Proceedings (continued)

45. Plaintiff's legal representation was persistently sabotaged. Her attorneys, Gregory Brown and Herb Fox, embezzled more than $300,000 from her trust account and failed to represent her in her legal malpractice case and failed to file  and execute timely appeals, causing irreparable harm. These actions constitute violations of fiduciary duty, constructive fraud, and obstruction of access to the courts in violation of 42 U.S.C. § 1983.

46. In Orange County JAMS ARBITRATION, Defendant  lawyer/judgePatricia Glaser (Glaser Weil LLP), in conspiracy with JAMS arbitrators and mediators, blocked a $40 million legal malpractice case brought by Amber , depriving her of the opportunity to be heard and redress meritorious claims.

47. Amber 's retained counsel From Paoli and Purdy at who was tampered with and bribed by glaser and her lawyers from Nemecek and Cole, Paoli & Purdy LLP failed to file responses or appear for arbitration, despite full payment by Plaintiff of all attorney fees, arbitration fees, and expert witness costs. Their failure resulted in another default judgment, procured through extrinsic fraud, breach of contract, and deliberate legal malpractice.

48. In 2022, Amber filed a motion in San Mateo Superior Court to vacate the fraudulent judgment under California Code of Civil Procedure § 473(d) for extrinsic fraud. Judge Danny Chou delayed the matter for 90 days, then denied the motion citing false procedural grounds, despite the absence of any statute of limitations for extrinsic fraud.

49. During oral proceedings for the motion to vacate, Quinn Emanuel partner Diane Doolittle brazenly publicly stated, "We don't bribe judges," without provocation. No other party had raised this issue, and her statement was construed as an unsolicited admission relevant to ongoing allegations of judicial bribery and collusion.

50. In a retaliatory action brought by former attorney Rivers Morrell in 2016, shortly after Amber terminated his services under duress, Amber 's cross-complaint was deliberately sabotaged through judicial collusion, attorney conflict, and ex parte judicial interference from Quinn Emanuel.

51. In 2024, Amber 's cross-complaint was systematically undermined by Gouge's counsel and several sets of her prior counsel. Judge Nico Dourbetas, acting on motions orchestrated by Quinn Emanuel and Goguen's defense team, declared Amber a vexatious litigant without proper hearing or findings, depriving her of court access in violation of due process and the First Amendment.

52. In 2024, despite Amber having already been granted a fee waiver and documented as indigent, Judge Dourbetas imposed a $50,000 security bond to maintain her cross-complaint. This unconstitutional demand effectively barred Amber , a trafficking survivor residing in a shelter, from proceeding with claims against billionaires and elite legal institutions.

G. Federal Court Obstruction and International Denial of Justice

55. In March 2023, Plaintiff filed a comprehensive civil complaint in the U.S. District Court In California, naming all primary actors, including state judges, attorneys, billionaires pedophiles, rapists and traffickers, and affiliated corporations for violations under the Trafficking Victims Protection Reauthorization Act (TVPRA), 42 U.S.C. § 1983, and related constitutional and statutory claims. District Judge Maame Frimpong dismissed the complaint without a hearing, erroneously citing res judicata to bar claims against numerous defendants who had never been parties to any prior action.

56. Between 2023 and 2025, Amber filed multiple federal complaints alleging human trafficking, sexual slavery, civil rights violations, obstruction of justice and systemic fraud. Federal judges, including Maame Frimpong, Donald Molloy, Steve Kim, David O. Carter, and Laura Taylor Swain, dismissed these actions under manufactured pretexts, often invoking res judicata or jurisdictional defects not supported by the record.

57. Quinn Emanuel partner Diane Doolittle interfered directly with Amber 's active federal litigation by sending ex parte communications to U.S. District Judge Laura Taylor Swain, including a physical FedEx letter sent to chambers in violation of judicial canons and ethical rules, resulting in procedural interference with a case pending in the Southern District of New York.

58. In July 2023, after Amber 's complaint and fee waiver were accepted in the Southern District of New York, Chief Judge Swain inexplicably transferred the case back to the Central District of California for adjudication, citing Frimpong's prior rulings, despite the fact that federal summons had been approved and service was in progress via the U.S. Marshals Service.

59. Magistrate Judge Steve Kim and District Judge Maame Frimpong then demanded that the case be reassigned to their court in California. When the Clerk's Office refused, citing it as  a discovery matter not a 42 U.S.C. § 1983 civil rights claim, Kim and Frimpong bypassed standard assignment procedures and dismissed the complaint without any hearing, briefing, or adjudication on the merits.

60. In August 2023, Plaintiff filed a separate civil complaint in the U.S. District Court for the District of Columbia (Amber Doe v. Vox Media et al.) to pursue relief based on ongoing defamation, interference with federal rights, and trafficking-related injuries. Once again, Quinn Emanuel intervened and manipulated judicial discretion to have the matter dismissed without hearing.

61. Plaintiff then filed in the U.S. District Court for the District of Montana, where Defendant Michael Goguen resides. The case was intercepted and reassigned to Senior Judge Donald Molloy, who had previously presided over criminal proceedings involving Goguen's former security contractor, Matthew Marshall. Judge Molloy denied Amber 's right to proceed, citing frivolous grounds and refusing to consider the merits of her trafficking and constitutional claims.

H. 2016–2024 Orange County Cross-Complaint and Judicial Persecution

62. In 2016, attorney Rivers Morrell, whom Plaintiff had been forced to terminate under duress, filed a $100 million action in Orange County Superior Court (Rivers Morrell v. Baptiste), naming Amber , Goguen, Quinn Emanuel, and Goodwin Procter as defendants. The case was improperly stayed pending the outcome of the fraudulent San Mateo judgment procured without notice or jurisdiction.

63. Defendant Patricia Glaser of Glaser Weil LLP intervened in the Orange County matter and orchestrated the removal of Amber 's retained counsel from Paoli & Purdy LLP through corrupt influence and bribery, thereby sabotaging Amber 's $40 million legal malpractice claim against Glaser Weil. The case was diverted to a confidential arbitration proceeding at JAMS, funded in full by Plaintiff, but hidden from her by her own attorneys.

64. Amber had paid legal fees, arbitration fees, and expert witness costs in full. However, Paoli & Purdy LLP, under Glaser's interference, failed to notify Plaintiff of the scheduled arbitration. As a result, the firm did not appear, and Glaser Weil secured a fraudulent multi-million dollar default judgment despite never serving discovery or proving any claims.

65. Between 2016 and 2024, Amber retained four separate legal teams to defend and prosecute her interests in the Orange County litigation. None filed a proper Answer on her behalf. By 2024, Glaser Weil's counsel, Nemecek & Cole LLP, was representing multiple adverse parties simultaneously, including all of Amber 's former attorneys, Glaser Weil, Rivers Morrell, The Law. Firm of Rivers J Morrell the III and Paoli & Purdy, in a textbook violation of ethical conflict rules and an egregious breach of fiduciary duty.

66. In July 2023, Amber filed a cross-complaint in the Orange County action, which was properly served on all parties. The filing included claims for legal malpractice, fraud, civil conspiracy, and violations of her federal civil rights under 42 U.S.C. § 1983 and the TVPRA.

67. On September 11, 2023, during a Zoom hearing, Judge Nico Dourbetas granted Amber 's fee waiver on grounds of indigency. However, at the same hearing, Quinn Emanuel attorney Kyle Batter announced a "secret settlement" between Rivers Morrell and Goguen, made without Plaintiff's participation or knowledge, further evidence of collusion and bad faith.

68. Despite having granted Amber 's fee waiver, Judge Dourbetas subsequently issued orders denying all of her motions without legal reasoning. He allowed Quinn Emanuel to proceed with litigation, while simultaneously claiming the case was "stayed against Amber ", a contradictory and unconstitutional posture that deprived Amber of access to the courts.

69. In July 2024, Judge Dourbetas issued an order demanding Amber post a $50,000 bond within 30 days or face dismissal of her cross-complaint. This demand, made of a trafficking survivor living in a shelter, constituted an unlawful denial of access to

justice in violation of her rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983.

70. Amber filed three separate motions for recusal of Judge Dourbetas on grounds of bias, conflict of interest, and judicial misconduct. All were summarily denied without explanation. Multiple attorneys from Quinn Emanuel and other firms submitted joinders supporting the vexatious litigant designation against Amber to silence her and deprive her of any redress against her abusers.

71. In August 2024, Judge Dourbetas dismissed Amber 's case and unlawfully declared her a vexatious litigant, thereby barring her from initiating or continuing any legal proceedings in California without first obtaining permission from the court. This designation, made without due process or findings of frivolous conduct, violated Amber 's rights under the U.S. Constitution, international law protecting trafficking survivors, and California's own procedural standards.

I. Retaliatory and Illegal Subpoenas

72. Plaintiff appealed Judge Dourbetas's dismissal to the California Court of Appeal for the Fourth Appellate District. All of her appeals were summarily dismissed without legal justification, allegedly under undue influence from Quinn Emanuel. In some cases, the appeals disappeared entirely from the docket, indicating tampering with the court record and denial of procedural due process.

73. The State Bar of California, despite receiving multiple bar complaints from Plaintiff supported by detailed evidence, refused to investigate or discipline any attorneys involved in embezzlement, conflict of interest, fraud, falsification of evidence, bribery, stalking, hacking,  judge tampering or subornation of perjury. The Bar cited Amber 's status as a "vexatious litigant" as a basis to deny her even the right to report crimes, an unconstitutional deprivation of equal protection and access to remedy.

74. Plaintiff filed judicial complaints against four state court judges in California with the Judicial Council. The complaint documents and the judges' names disappeared from the system without adjudication. When Amber appeared in person at the Judicial Council's offices in San Francisco, she was handed blank dismissal forms with no judge names or investigative records attached.

75. During the same period, Canadian Judges Cory Gilmore and Barbara Conway, cooperating with Quinn Emanuel and Lenczner Slaght LLP, issued ex parte freezing orders and relied on falsified evidence, falsified address, falsified bank accounts

creating fake jurisdiction to deny Plaintiff access to her assets and prevent her from funding legal representation or urgent medical care.

76. Staff at Plaintiff's Canadian banking institutions, acting at the direction of Defendant Monique Jilesen, blocked Amber 's transactions and provided unauthorized financial data to Defendants, resulting in unlawful asset seizure and obstruction of Plaintiff's access to life-sustaining treatment and constitutional rights. All of the bank staff who participated in the conspiracy have been terminated.

77. In 2025, Diane Doolittle, acting in bad faith and with no legal jurisdiction, issued subpoenas in a closed California case that had been inactive since 2019. These subpoenas were directed at Google, Verizon, Mint Mobile, T-Mobile, AT&T,  Cox Communications  Facebook, and other third-party platforms, and document repositories, seeking Amber 's private information without notice, service, or court approval, violating the Stored Communications Act (18 U.S.C. § 2701 et seq.) and Plaintiff's rights under the First and Fourth Amendments.

78. Plaintiff only became aware of these illegal subpoenas after being contacted by Google's Legal Compliance Department in May 2025, who questioned whether she wished to move to quash the subpoenas. These unlawful discovery efforts in a closed case constitute abuse of process and retaliation against a protected individual under 18 U.S.C. § 1592 (obstruction of enforcement) and 18 U.S.C. § 1512(b) (witness tampering and retaliation).

J. Final Acts of Judicial Retaliation and Criminal Fraud

79. In July 2024, Plaintiff filed a motion to vacate a second fraudulent multi-million-dollar judgment entered in 2019 in Los Angeles County Superior Court. The judgment had been procured without Plaintiff's knowledge by Patricia Glaser and her firm, Glaser Weil LLP. Plaintiff only discovered the proceeding in Spring 2024 during an in-person records review at the Los Angeles courthouse.

80. From July to November 2024, Los Angeles Superior court Judge Stephanie Bowick refused to grant Plaintiff's fee waiver on three separate occasions, thereby unlawfully barring her from proceeding with the motion to vacate Glaser Weil LLPs fraudulent multi million dollar judgement. Judge Bowick later held an undisclosed chambers proceeding and summarily denied the motion to vacate, in violation of California due process rights and federal constitutional guarantees.

81. Plaintiff subsequently removed the matter to federal court under 28 U.S.C. § 1441(c) and § 1443 (civil rights removal). In furtherance of the conspiracy to obstruct justice The motion to vacate was improperly dismissed with no legal basis after being brought up on appeal before the U.S. Court of Appeals for the Ninth Circuit.

82. In August 2024, Plaintiff appeared in person in San Mateo County Superior Court for a quasi criminal contempt trial based on allegations of "criminal defamation" of Michael Goguen. Plaintiff had been ordered to appear under threat of arrest for speech protected under the First Amendment. She was instructed by Judge Susan Greenberg to consult the San Mateo County Courts Private Defender's Office, but they failed to return her calls. At a follow-up hearing in October 2024, an attorney named Katrina Steiner appeared in court, unannounced and without prior contact, and falsely claimed to represent Amber .

83. Between October 2024 and March 2025, Steiner conducted no discovery or trial preparation. Amber later discovered that court appointed counsel Katrina Steiner was a close personal friend of Judge Susan Greenberg, who was originally presiding over the contempt trial.

In January 2025 Susan Greenberg was moved to probate. Judge Nina Shapirshteyn was appointed Amber 's repeated requests to proceed pro se or obtain independent counsel were denied in a Marsden hearing, depriving her of her Sixth Amendment right to effective assistance of counsel.

84. Amber subsequently discovered that California Attorney General Rob Bonta and San Mateo Judge Danny Chou had a long-standing personal and professional relationship, dating back to their shared time clerking for the California Supreme Court, evidence of institutional conflict that was never disclosed to the parties.

85. Between January and March 2025, Judge Nina Shapirshteyn, newly assigned to the matter, denied five of Amber 's meritorious motions:
(1) to vacate the fraudulent judgment;
(2) for new trial;
(3) to disqualify Quinn Emanuel due to financial interest in the prosecution;
(4) for preliminary injunction and temporary restraining order (TRO); and
(5) to vacate the unconstitutional gag order.
The case proceeded to a rigged bench trial in March 2025, despite having been properly removed to federal court in January 2025. Plaintiff's request to proceed pro se was again illegally denied.

86. In March 2025, Judge Shapirshteyn presided over a quasi-criminal bench trial without jurisdiction and in abstentia found Plaintiff guilty of "criminal defamation" of

Pedophilic serial rapist and trafficker who exploited at least 5000 girls and women globally since the 1990s, Michael Goguen, a legal impossibility under U.S. constitutional law, as defamation is a civil matter and speech about public figures is protected by the First Amendment.

87. Plaintiff later learned via internet records that she had been assigned no-bail status and was subject to an arrest warrant for a misdemeanour contempt charge stemming from her public exposure of billionaire pedophiles. Despite having no criminal record and posing no threat to the community, Plaintiff was treated more severely than violent felons, murderers and serial rapists further evidence of institutional retaliation and viewpoint discrimination.

K. Supreme Court of California Sabotage and Final Federal Violations

88. In 2024, Plaintiff filed multiple emergency writs with the Supreme Court of California, including a Writ of Certiorari, Writ of Mandamus, Writ of Error Coram Nobis, and applications for Preliminary Injunctions. All were denied by Chief Justice Patricia Guerrero, who cited Amber 's unlawful "vexatious litigant" designation as a barrier to relief, despite that designation itself having been imposed in violation of constitutional rights and without due process.

89. Judges Stephanie Bowick, Danny Chou, and Nina Shapirshteyn each denied motions critical to Plaintiff's survival and legal redress, including motions to vacate fraudulent judgments and to disqualify attorneys with direct financial and ethical conflicts. These denials cumulatively deprived Plaintiff of access to meaningful judicial remedy and constitute violations of 42 U.S.C. § 1983 and the First, Fifth, and Fourteenth Amendments.

90. Judge Bowick refused to grant Plaintiff's fee waiver and held an unauthorized, closed-door hearing to deny Plaintiff's motion to vacate a judgment procured by fraud and perjury, thereby violating both federal and state due process rights.

91. Judge Shapirshteyn conducted a quasi-criminal contempt trial in March 2025 without jurisdiction, following Plaintiff's federal removal in January. She found Amber "guilty" of criminal contempt in absentia, based on constitutionally protected speech. The trial was rigged, retaliatory, and facially invalid under U.S. law.

92. Between April and May 2025, Diane Doolittle of Quinn Emanuel served illegal subpoenas in the closed 2019 San Mateo matter. Despite discovery having been closed for over six years, she issued subpoenas, using the old case number, via A&A Legal to

Google, Yahoo, Mint Mobile Verizon,  Cox communications  T-Mobile, AT&T, and Verizon, without court authorization or service on Amber .

93. In late May 2025, Plaintiff was contacted by Google's Legal Compliance Department regarding these subpoenas, which sought private and protected data. Plaintiff had never received notice of their issuance. These acts constitute clear violations of the Stored Communications Act, abuse of process, and attempted intimidation in retaliation for Amber 's protected litigation and public exposure of criminal misconduct.

94. The above-stated facts represent approximately fifteen percent of the known felonious conduct perpetrated by Defendants and their agents. Plaintiff reserves the right to supplement these facts as discovery proceeds. All named Defendants are subject to joint and several liability, including vicarious liability for the actions of their agents, employees, and co-conspirators under TVPRA, RICO, § 1983, and common law conspiracy doctrines.

## JURISDICTION AND VENUE

### IV.

1.   This Court has subject matter jurisdiction over this action pursuant to:

- ◦    28 U.S.C. § 1331 (Federal question jurisdiction);

- ◦    28 U.S.C. § 1332 (Diversity jurisdiction — Plaintiff is a Canadian citizen; Defendants are U.S. citizens or entities);

- ◦    28 U.S.C. § 1343(a)(3)–(4) (Civil rights enforcement);

- ◦    28 U.S.C. § 1350 (Alien Tort Statute — violations of international human rights law, including the Palermo Protocol);

- ◦    28 U.S.C. § 1367 (Supplemental jurisdiction over state, provincial, and international law claims);

- ◦    18 U.S.C. §§ 1961–1968 (Racketeer Influenced and Corrupt Organizations Act, "RICO");

- ◦    18 U.S.C. § 1595(a) (Civil remedy for victims of human trafficking under the Trafficking Victims Protection Reauthorization Act, "TVPRA");

- 42 U.S.C. § 1983 (Civil rights violations under colour of law).

2.  Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(1)–(3) and 18 U.S.C. § 1965(a)–(b), because:
    a. A substantial portion of the events, omissions, trafficking transactions, retaliatory publications, and enterprise operations occurred in this District;
    b. Multiple Defendants reside, are found, transact business, or are otherwise subject to personal jurisdiction in this District;
    c. No other forum offers a fair and impartial venue due to well-documented corruption, obstruction of justice, and sabotage in California, Montana, and Ontario;
    d. RICO's "ends of justice" provision under 18 U.S.C. § 1965(b) authorizes nationwide service and permits suit against all co-conspirators in any district where one defendant is found.

3.  This Court has personal jurisdiction over all named Defendants under:

    - Federal Rule of Civil Procedure 4(k)(1)(A) and New York's long-arm statute (CPLR § 302);

    - Federal Rule 4(k)(2), for claims under federal law involving foreign defendants (e.g., Sequoia Canada, Sequoia Israel);

    - 18 U.S.C. § 1965(b) (RICO — nationwide jurisdiction over enterprise participants);

    - U.S. constitutional due process, as Defendants purposefully availed themselves of this forum through continuous commercial, legal, media, and trafficking-related activity within the State of New York.

A. Sequoia Capital's Presence in New York

Defendant Sequoia Capital Operations, LLC, along with its affiliates (including Sequoia Capital IX, Franchise Partners, Heritage, SCGE, Sequoia China, Sequoia Canada, and Sequoia Israel), maintains its first U.S. office outside Silicon Valley in this District at:

124 East 14th Street, 19th Floor, Zero Irving Building, New York, NY 10003.

This office functions as a regional base for Sequoia's East Coast operations and enterprise coordination. Sequoia's presence in New York establishes minimum contacts for personal jurisdiction and a substantial nexus for venue.

B. Two Bear Capital's New York Headquarters

Defendant Two Bear Capital, including Two Bear Capital Operations LLC and its founder Michael Goguen, established its New York headquarters at:

430 East 29th Street, Suite 945, New York, NY 10016, on or around October 2, 2023.

This expansion took place less than two months after Plaintiff's case was improperly transferred out of SDNY, demonstrating calculated forum manipulation and continued enterprise conduct in this District.

C. Legal Defendants Operating in SDNY

The following Defendant law firms maintain active offices and have engaged in enterprise-related litigation abuse, fraudulent filings, and obstruction of justice within this District:

- Quinn Emanuel Urquhart & Sullivan LLP – 51 Madison Avenue, New York, NY;

- Wilson Sonsini Goodrich & Rosati LLP – Active New York office;

- Kirkland & Ellis LLP – 601 Lexington Avenue, New York, NY;

- Goodwin Procter LLP – 620 Eighth Avenue, New York, NY;

- Sherman Law and Nemecek & Cole LLP and their agents.

These firms coordinated cross-border obstruction, retaliatory legal actions, and fraudulent enforcement strategies from within New York.

D. Media Defendants Based in New York

The following media entities — all headquartered in this District — disseminated retaliatory and defamatory content targeting Plaintiff:

- The New York Post (NYP Holdings Inc.);

- New York Magazine;

- Bloomberg L.P. and Bloomberg Finance L.P.;

- MSNBC Cable LLC and NBCUniversal LLC (New York-based operations).

These media defendants collaborated with enterprise legal teams to defame Plaintiff, silence her allegations, and obstruct her access to justice. These acts caused reputational, psychological, and financial harm in this jurisdiction.

E. Trafficking and Hotel Defendants in New York

Plaintiff was trafficked into and through New York repeatedly. She was abused, stalked, surveilled, and exploited in Manhattan by agents of the criminal enterprise. Trafficking nodes included luxury residences, clubs, yachts, and hotels coordinated by Defendants.

Specifically, properties owned and operated by:

- Rosewood Hotels & Resorts

- Marriott International

- Marriott Hotel Services Inc.

were used as venues of sexual exploitation and concealment while Defendants transacted commercial hospitality business in New York. These hotels failed to act on visible trafficking indicators and enabled enterprise operations.

F. Additional Basis for Jurisdiction and Venue

Plaintiff was physically present in New York when she was surveilled, harassed, and defamed by agents of the enterprise. Defendant Jamie Stephenson, who later married Michael Goguen, made defamatory public statements about Plaintiff while acting in coordination with enterprise affiliates operating in this District.

Fraudulent litigation tactics — including subpoenas, asset tracing, and enforcement schemes — were initiated from and coordinated through New York law firms and

media operations. Plaintiff's attempts to report abuse to the NYPD were ignored, compounding the deprivation of her rights in this District.

NEW YORK INCIDENT: TRAFFICKING, STALKING, AND RETALIATION WITHIN SDNY

Plaintiff Amber Doe was trafficked repeatedly into and through the Southern District of New York as part of a cross-border criminal enterprise orchestrated by The Hells Angels, Defendants including Michael Lewis Goguen, and associated co-conspirators. On multiple occasions, Plaintiff was coerced and transported to hotels, private residences, clubs, and yachts in Manhattan. These locations, including Marriott-affiliated hotels, were used as trafficking nodes by the enterprise.

While in New York, Plaintiff was:

- Surveilled and stalked by private investigators hired by Goguen, Sequoia Capital, and their lawyers;

- Sexually exploited under coercion and threat of death;

- Denied protection when she attempted to report these crimes to NYPD precinct officers;

- Defamed through coordinated media attacks published by Bloomberg, MSNBC, The New York Post, and New York Magazine - each headquartered in this District.

These actions caused irreparable harm to Plaintiff's reputation, mental health, and professional opportunities in New York, where she had pending housing and career opportunities at the time.

SUMMARY OF ARGUMENT

The non-refoulement principle is a cornerstone of U.S. law and international human rights law. Codified in 8 U.S.C. § 1231(b)(3) and Article 33 of the Refugee Convention, it prohibits returning any individual to a forum where persecution, torture, or denial of justice is foreseeable. This principle applies not only to physical deportation but also to judicial transfers that knowingly channel a trafficking survivor back into the control of traffickers and corrupted courts.

Judge Swain's order is paradigmatic judicial refoulement: it launders prior California rulings (themselves products of corruption) into federal proceedings, ensuring Appellant is trapped in a closed loop of persecution with no neutral tribunal. That violates both U.S. statutory protections and treaty obligations, including the ICCPR, CAT, and the Palermo Protocol.

## ARGUMENT

### I. Judicial Refoulement Violates 8 U.S.C. § 1231(b)(3)

- Section 1231(b)(3)(A) prohibits returning individuals to jurisdictions where persecution is "more likely than not." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 (1987).

- Courts have extended this protection to non-immigration contexts where state action foreseeably results in persecution. See *Khouzam v. Att'y Gen.*, 549 F.3d 235, 252–54 (3d Cir. 2008).

- Judicial transfers fall within this prohibition when they knowingly subject trafficking survivors to renewed harm.

### II. Transfer to a Known Hostile Forum Violates Due Process and ICCPR, Art. 14

- The Due Process Clause guarantees access to a neutral tribunal. *Tumey v. Ohio*, 273 U.S. 510 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

- ICCPR, Art. 14, binding on the U.S., likewise guarantees impartial adjudication.

- Transferring Plaintiff back to California, where courts have declared her "vexatious" under trafficker influence, is the functional equivalent of denying access to any court at all.

### III. International Obligations under the Refugee Convention and CAT Apply to Judicial Transfers

- Refugee Convention, Art. 33(1): prohibits return to any place of threatened persecution.

- CAT, Art. 3: prohibits transfer to any forum where torture is likely.

- U.S. courts recognize that treaty obligations are enforceable where consistent with domestic law. See *Murray v. Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804).

- Judicial transfer orders that predictably result in persecution fall squarely within these prohibitions.

IV. U.S. Jurisprudence Recognizes Constructive Refoulement

- Courts have recognized "indirect" or "constructive" refoulement in extradition, deportation, and removal contexts. See *Cornejo-Barreto v. Seifert*, 218 F.3d 1004 (9th Cir. 2000).

- This principle must apply to judicial transfers that knowingly replicate persecution risks.

V. Plaintiff Faces Irreparable Harm

- Denial of access to courts, loss of survival resources, exposure to retaliatory imprisonment = irreparable. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

- Continued trafficking under judicial auspices compounds the harm, violating 18 U.S.C. §§ 1590–1595.

CONCLUSION

For the foregoing reasons, this Court should:

1. Reverse the August 20, 2025 transfer order;

2. Declare judicial refoulement unlawful;

3. Enjoin any further transfers of Plaintiff's case to California or other corrupted jurisdictions;

4. Grant such further relief as justice requires.

Respectfully submitted,

*Amber Doe*

Amber Doe
Plaintiff–Appellant, pro se

In service of a better humanity

## Statement of Severance and Demand for Justice in the Face of Organized Human Trafficking

In the cruel and unrelenting shadows of our legal system, where the powerful conceal their abuses beneath layers of wealth and privilege, the trafficking of women and girls for the sickening pleasure of pedophiles and serial rapists remains one of the darkest crimes. These are not mere violations of law, they are brutal, savage assaults on the very essence of human dignity, exploiting the vulnerability of the innocent to satisfy the perverse appetites of those who should be held to the highest standards of justice, yet are the very architects of this suffering.

Modern-day slavery, as embodied in the trafficking of these girls, is one of the most egregious offences against humanity. It is so odious a crime that no justification, no complicity, and no institution may stand in defense of it. This is not an issue of politics, not an issue of opinion; it is a question of our collective moral responsibility, a matter of life and death for the women and girls trapped in these horrors. The exploitation of girls for sexual abuse, especially by those in positions of unimaginable power, must be met with swift and unrelenting justice.

LET JUSTICE BE DONE, THOUGH THE HEAVENS MAY FALL. WE, AS A SOCIETY, MUST NOT, AND CANNOT, ALLOW THESE CRIMES TO CONTINUE WITH IMPUNITY. THE SALE OF CHILDREN AND WOMEN FOR THE GRATIFICATION OF DEPRAVED INDIVIDUALS CANNOT AND MUST NOT BE ALLOWED TO FLOURISH UNDER THE FALSE PROTECTION OF WEALTH, INFLUENCE, OR THE CORRUPT JUDICIARY. TO THOSE WHO ARGUE OTHERWISE, TO THOSE WHO CLAIM THAT MEN HAVE A RIGHT TO BUY, SELL, OR OWN THESE VICTIMS: YOUR VOICES ARE COMPLICIT IN THIS EVIL, AND YOUR FAILURE TO ACT RENDERS YOU NO BETTER THAN THE CRIMINALS YOU SEEK TO SHIELD.

THESE FEMALE JUDGES WHO ASSERT THAT MEN MAY BUY AND SELL GIRLS ARE AS IMPOTENT AS THE BILLIONAIRES WHO BANKROLL THEM, LIVING IN A BUBBLE OF PRIVILEGE WHILE TURNING A BLIND EYE TO THE DEVASTATION THEIR COMPLICITY CAUSES. THE EVIDENCE OF THEIR FAILURE IS NOT IN THE SHADOW OF THEIR DECISIONS, BUT IN THE EYES OF THE CHILDREN WHO ARE TRADED LIKE COMMODITIES, THE WOMEN WHOSE LIVES ARE DESTROYED, AND THE GENERATIONS OF SURVIVORS WHO ARE LEFT TO PICK UP THE PIECES.

WE CALL FOR IMMEDIATE ACTION, ACTION THAT STRIPS AWAY THE CLOAK OF SECRECY, ACTION THAT HOLDS THESE MEN, THESE WOMEN, THESE INSTITUTIONS TO ACCOUNT. THERE MUST BE NO SAFE HAVEN FOR THOSE WHO FUND OR FACILITATE THESE CRIMES, AND NO EXCUSE FOR THOSE WHO HAVE TURNED A BLIND EYE TO THEM.

LET THIS BE A CLARION CALL FOR JUSTICE. LET THE LAW STAND AS AN UNYIELDING FORCE AGAINST THE TRAFFICKING RINGS, AGAINST THE CORRUPT INDIVIDUALS, AGAINST THE INSTITUTIONS THAT PERPETUATE THE SALE OF HUMAN LIVES. WE DEMAND THAT ALL INVOLVED, FROM THE HIGHEST-RANKING OFFICIALS TO THE COMPLICIT LEGAL OPERATIVES, BE HELD ACCOUNTABLE.

IF THE HEAVENS FALL, LET THEM FALL. BUT LET JUSTICE RISE, UNBROKEN, UNRELENTING, AND IRREVOCABLE.

REFORM AND ACCOUNTABILITY: A CALL FOR JUSTICE IN THE FACE OF JUDICIAL CORRUPTION AND SYSTEMIC BIAS

THE JUDICIARY, ONCE THE PILLAR OF JUSTICE, HAS BEEN CO-OPTED INTO AN INSTRUMENT OF MOCKERY AND OPPRESSION. WE STAND AT A PRECIPICE WHERE THE VERY FOUNDATION OF FAIRNESS IS CRUMBLING BENEATH THE WEIGHT OF SYSTEMIC CORRUPTION, INFLUENCED BY POWER, PRIVILEGE, AND A FAILING COMMITMENT TO HUMAN DIGNITY. THE ACTIONS OF A FEW, THOSE IN HIGH POSITIONS, HAVE SERVED ONLY TO PERPETUATE THE CYCLES OF INJUSTICE, FURTHER ENTRENCHING THE FALSE NARRATIVE THAT CERTAIN INDIVIDUALS AND GROUPS ARE BEYOND THE REACH OF TRUE ACCOUNTABILITY.

THE LATEST WAVE OF FAILURES WITHIN OUR JUDICIAL SYSTEM IS NOT A COINCIDENCE BUT A DESIGN, A DANGEROUS AND DELIBERATE PATTERN THAT ENSURES THOSE IN POWER CONTINUE TO EVADE JUSTICE WHILE THE MARGINALIZED SUFFER. A COURT SYSTEM THAT ONCE SOUGHT TO PROTECT THE INNOCENT IS NOW NOTHING MORE THAN A TOOL FOR THE PRIVILEGED ELITE, WHO HAVE PERFECTED THE ART OF MANIPULATING LAWS AND PROCESSES FOR PERSONAL GAIN. AS THESE ABUSES CONTINUE UNCHECKED, ONE THING BECOMES PAINFULLY CLEAR: THOSE WHO HAVE BEEN ENTRUSTED TO UPHOLD JUSTICE ARE NOW ITS MOST RUTHLESS PERPETRATORS.

THE HORRIFYING TRUTH IS THAT THE WOMEN IN POSITIONS OF POWER, THE VERY WOMEN WHO SHOULD BE LEADING THE CHARGE FOR REFORM, ARE INSTEAD AIDING IN THE SYSTEMATIC EROSION OF ANY MEANINGFUL FORM OF JUSTICE. THESE WOMEN, IN THEIR COMPLICITY OR SILENCE, HAVE BECOME PAWNS IN A GAME THAT SERVES ONLY THE INTERESTS OF THOSE WHO CONTROL THE LEVERS OF POWER: THE WHITE MALE SUPREMACIST PATRIARCHY.

WHAT THE WORLD IS WITNESSING TODAY IS NOT THE TRIUMPH OF THE FEMINIST CAUSE, BUT ITS BETRAYAL. THE VERY SYSTEM THAT WAS MEANT TO PROVIDE PROTECTION AND EQUALITY HAS BEEN ALLOWED TO BECOME A CIRCUS, A FARCE WHERE THE MOST HEINOUS CRIMES AGAINST WOMEN AND CHILDREN ARE FACILITATED AND IGNORED BY THE VERY PEOPLE WHO SHOULD BE THEIR CHAMPIONS. AND AS THESE WOMEN FAIL TO RISE TO THE OCCASION, THE PRECEDENT IS SET THAT WOMEN IN POWER ARE WEAK, INEFFECTIVE, AND UNWORTHY OF THEIR

ROLES, ALLOWING THE PATRIARCHAL FORCES THEY SHOULD BE CHALLENGING TO TIGHTEN THEIR GRIP EVEN FURTHER.

THIS IS THE LEGACY OF A JUDICIARY THAT HAS LOST ITS MORAL COMPASS, A JUDICIARY THAT NOW SERVES THE RICH, THE CORRUPT, AND THE POWERFUL. A JUDICIARY THAT, UNLESS REFORMED, WILL ENSURE THAT TWENTY YEARS FROM NOW, THE BRIGHTEST, MOST CAPABLE WOMEN IN THE WORLD, REGARDLESS OF RACE OR BACKGROUND, WILL NEVER HAVE THE OPPORTUNITY TO HOLD THE HIGHEST JUDICIAL OFFICE, SIMPLY BECAUSE THOSE WHO HAVE COME BEFORE THEM HAVE PROVEN THEIR OWN INCOMPETENCE AND FAILURE.

WE CANNOT ALLOW THIS BETRAYAL TO CONTINUE. THE TIME FOR ACTION IS NOW. WE DEMAND A JUDICIARY THAT SERVES THE PEOPLE, NOT THE ELITES. WE DEMAND A SYSTEM THAT UPHOLDS THE LAW FAIRLY, IMPARTIALLY, AND WITH INTEGRITY. THE TRUTH MUST BE REVEALED, AND THE GUILTY MUST BE HELD ACCOUNTABLE, REGARDLESS OF THEIR WEALTH OR STATUS. OUR PURSUIT OF JUSTICE MUST NOT FALTER, AND WE MUST NOT LET THE CORRUPTED FEW DICTATE THE FATE OF THOSE WHO DESERVE THE PROTECTION AND FAIRNESS THE LAW WAS MEANT TO PROVIDE.

LET US RECLAIM THE JUSTICE SYSTEM FROM THOSE WHO HAVE PERVERTED IT AND RETURN IT TO ITS RIGHTFUL PURPOSE: TO SERVE ALL, TO PROTECT THE INNOCENT, AND TO PUNISH THE GUILTY.

## THE JIM CROW COURTS NEVER CLOSED, THEY JUST CHANGED THEIR ROBES

BETTY JEAN OWENS WAS A 19-YEAR-OLD BLACK COLLEGE STUDENT IN 1959 WHEN FOUR WHITE MEN KIDNAPPED, GANG-RAPED, AND NEARLY MURDERED HER. THEY CONFESSED. A WHITE JURY BELIEVED HER. AND STILL, THOSE MEN WERE GRANTED "MERCY." LIFE SENTENCES WERE HANDED DOWN, BUT EACH WAS PAROLED WITHIN YEARS. ONE EVEN MURDERED ANOTHER BLACK WOMAN A DECADE LATER, BETTY JEAN HOUSTON, DRIVEN BY REVENGE FOR BEING CONVICTED IN OWENS' CASE. THIS IS NOT ANCIENT HISTORY. THIS IS THE UNBROKEN LINEAGE OF STATE-SANCTIONED

BRUTALITY. THIS IS JIM CROW IN ITS PUREST FORM , A SYSTEM THAT NEVER ENDED, ONLY SHAPE-SHIFTED.

TODAY, 41 JUDGES ACROSS JURISDICTIONS CONSPIRE TO DO TO ME WHAT THEY DID TO BETTY: BURY MY STORY, PROTECT THE MEN WHO TRAFFICKED AND RAPED ME, AND REWARD THE LAWYERS WHO COVERED IT UP. WHAT HAS CHANGED? THE SWITCHBLADES HAVE BECOME GAVELS. THE NIGHT RIDES HAVE BECOME CHAMBERS. THE "WARNINGS" ARE NOW COURT RULINGS. BUT THE RESULT IS THE SAME: A WOMEN OF COLOUR VIOLATED, DISBELIEVED, SILENCED, AND PUNISHED FOR SURVIVING.

JUST LIKE BETTY, I DID EVERYTHING I WAS SUPPOSED TO DO. I TOLD THE TRUTH. I SOUGHT HELP. I WENT TO COURT. AND IN RETURN, I HAVE BEEN BRUTALIZED AGAIN , NOT BY BACK-ALLEY MOBS, BUT BY BLACK-ROBED CONSPIRATORS WHO SWEAR OATHS TO JUSTICE AND DELIVER THE OPPOSITE. JUST LIKE BETTY, THEY ASK IF I ENJOYED IT, IF I BROUGHT IT ON MYSELF, IF I DESERVE TO BE HEARD. THE ONLY THING I'VE BEEN GRANTED IS IMPUNITY , NOT FOR ME, BUT FOR MY ABUSERS.

THIS IS THE LEGAL DOCTRINE OF "PERMITTED VIOLENCE AGAINST BLACK WOMEN AND WOMEN OF COLOUR." AND IT IS ALIVE AND WELL.

WE WERE TOLD JIM CROW DIED. HE DIDN'T. HE WENT TO LAW SCHOOL.

1
2
3
4
5
6
7

8    THE SUPREME AND INFALLIBLE FARCE OF THE JUDICIARY

9
10   LADIES AND GENTLEMEN, GATHER ROUND, FOR TODAY WE WITNESS THE MOST
     MAGNIFICENT CIRCUS EVER TO GRACE THE STAGE: THE MODERN JUDICIARY, A
11   SPECTACLE SO ABSURD THAT EVEN THE GODS WOULD TURN THEIR HEADS IN
12   DISBELIEF. WHO NEEDS THE RULE OF LAW WHEN WE HAVE AN ELITE CAST OF
13   ACTORS, PAID HANDSOMELY TO PRETEND THEY UPHOLD JUSTICE, WHILE IN REALITY
     THEY ARE BUSY APPLAUDING THE PEDOPHILES, RAPISTS, TRAFFICKERS, AND THE
14   CORRUPT BILLIONAIRES WHO BANKROLL THEIR EVERY MOVE?
15
16   BEHOLD, THE JUDICIAL SYSTEM, A WELL-OILED MACHINE OF DECEPTION, CAREFULLY
17   CRAFTED TO MAKE THE POWERFUL EVEN MORE POWERFUL, AND THE POWERLESS…
     WELL, EVEN MORE POWERLESS. HOW COULD WE POSSIBLY QUESTION THE INTEGRITY
18   OF A SYSTEM WHERE THE JUDGES THEMSELVES HAVE BEEN HANDPICKED FOR THEIR
19   ABILITY TO TURN A BLIND EYE AND TO WEAR THE MOST FASHIONABLE BLINDFOLDS?
20   THESE WOMEN, THESE SO-CALLED ARBITERS OF JUSTICE, HAVE PERFECTED THE ART
21   OF LOOKING THE OTHER WAY, BECAUSE LET'S FACE IT, NOTHING SAYS
22   "EMPOWERED" LIKE PRETENDING THAT HUMAN TRAFFICKING AND SEXUAL
23   EXPLOITATION AREN'T REALLY HAPPENING RIGHT UNDER YOUR NOSE.

24   AND LET US NOT FORGET THE BILLIONAIRES, THOSE NOBLE TITANS OF INDUSTRY,
25   WHOSE WORK, AS THEY REMIND US DAILY, IS SO MUCH MORE IMPORTANT THAN THE
26   LIVES OF THE WOMEN AND CHILDREN THEY TRADE LIKE COMMODITIES. IT'S TRULY
     INSPIRING TO WATCH THE RICH AND CORRUPT PAY THEIR WAY TO A JUDICIAL SYSTEM
27   THAT GLEEFULLY ACCEPTS THEIR MONEY AND INFLUENCE, ALL WHILE MAINTAINING
28

THE ILLUSION OF FAIRNESS. IF YOU NEED PROOF THAT POWER HAS ITS PRIVILEGES, LOOK NO FURTHER THAN THE JUDGES WHO ARE NOW MORE ACCUSTOMED TO CASHING CHECKS THAN DISPENSING JUSTICE.

LET US BE CLEAR: THIS IS NO ACCIDENT. THIS IS THE WELL-CALCULATED OUTCOME OF A SYSTEM THAT HAS, FOR CENTURIES, BEEN BUILT UPON THE IDEA THAT SOME LIVES ARE WORTH MORE THAN OTHERS. IT'S THE SAME OLD STORY, WHERE A BILLIONAIRE, COMPLETE WITH THEIR ARMY OF LAW FIRMS, CAN HIRE A SMALL ARMY OF LEGAL PROFESSIONALS WHO WILL WORK DAY AND NIGHT TO ENSURE THAT A PEDOPHILE, A SERIAL RAPIST, OR A TRAFFICKER CAN CONTINUE THEIR NEFARIOUS WORK UNINTERRUPTED. MEANWHILE, THE WOMEN AND CHILDREN CAUGHT IN THIS WEB? WELL, THEY'RE SIMPLY COLLATERAL DAMAGE, JUST ANOTHER STATISTIC IN THE EVER-GROWING PILE OF HUMAN MISERY, WAITING FOR THE NEXT JUDGE TO LOOK THE OTHER WAY.

AND LET'S TALK ABOUT THOSE JUDGES, SHALL WE? THESE WOMEN, HAND-PICKED FOR THEIR "EXCEPTIONAL" ABILITY TO DISREGARD THE CRIES FOR JUSTICE, HAVE TRULY EARNED THEIR ROBES. THEY HAVE, TIME AND TIME AGAIN, PROVEN THAT THEIR COMMITMENT TO PROTECTING THE INNOCENT IS SECONDARY TO THEIR COMMITMENT TO PROTECTING THEIR OWN POSITIONS OF POWER. THEY ARE AS EFFECTIVE AS A LIMP HANDSHAKE IN THE COURTROOM, AND JUST AS MEMORABLE. OH, BUT DO THEY HAVE THEIR TITLES AND THEIR COURTROOMS! DON'T BE FOOLED, THOUGH: THOSE TITLES DON'T REFLECT POWER, THEY REFLECT A SYSTEMATIC FAILURE SO GROTESQUE THAT EVEN THE MOST DESPICABLE CRIMINALS IN HISTORY WOULD BE ASHAMED TO ASSOCIATE WITH IT.

TO THOSE WHO SAY THAT THIS SYSTEM WORKS, I SAY, LOOK AROUND. ASK YOURSELF: HOW MANY MORE MUST SUFFER BEFORE YOU ADMIT THAT THE EMPEROR IS NAKED? THESE FEMALE JUDGES, THESE GLORIFIED CARETAKERS OF NOTHING MORE THAN A LEGAL LOOPHOLE, HAVE PROVEN ONE UNDENIABLE TRUTH: THEY ARE NOTHING MORE THAN PUPPETS OF A SYSTEM THAT IS RIGGED FROM THE START. THEY HAVE SOLD THEIR INTEGRITY FOR A SEAT AT THE TABLE, AND IN DOING SO, THEY HAVE GUARANTEED THAT THE WOMEN THEY SHOULD BE DEFENDING WILL NEVER SEE

JUSTICE. THEIR COMPLICITY IS NOT A QUIET ACT, IT IS A ROARING DECLARATION THAT THE LAW IS ONLY FOR THOSE WHO CAN AFFORD TO PLAY THE GAME.

SO, LET US RAISE A GLASS TO THE JUDICIAL SYSTEM, THE WORLD'S GREATEST JOKE. MAY THE HEAVENS FALL, BUT LET US CONTINUE TO LAUGH IN THE FACE OF THOSE WHO WOULD RATHER SEE WOMEN SUFFER THAN DISRUPT THE ALMIGHTY DOLLAR. AFTER ALL, WHAT IS JUSTICE, WHEN IT CAN BE BOUGHT AND SOLD LIKE ANYTHING ELSE?

TO THE WOMEN, THE MOST FARCICAL FEMINISTS ON THE PLANET, JUDGES WHO FLY IN THE FACE OF JUSTICE, IN LIEU OF LINING THEIR POCKETS WITH THE BLOOD MONEY OF GIRLS LIVES SOLD ON THE BLACK MARKET. THE DEBASED JUDGES ACTING UNDER THE COLOURS OF THE LAW WHO HAVE PROVEN THEMSELVES MORE LOYAL TO THE PATRIARCHAL FORCES THEY SHOULD BE CHALLENGING, I SAY: WELL DONE! YOU'VE PROVEN EVERY STEREOTYPE WRONG, BY CONFIRMING THE VERY ONES YOU SHOULD BE FIGHTING. AND TO THE BILLIONAIRES, WELL, KEEP THOSE CHECKS COMING. THE COURTROOMS MAY BE FILLED WITH CHARLATANS, BUT YOU'LL ALWAYS HAVE A SEAT AT THE TABLE.

## THE FINAL HOPE: A CALL FOR JUSTICE AND INTEGRITY IN THE JUDICIARY

DESPITE THE OVERWHELMING TIDE OF CORRUPTION, DESPITE THE LAYERS OF PRIVILEGE, MONEY, AND POWER THAT HAVE POLLUTED OUR JUSTICE SYSTEM, I STAND FIRM IN MY BELIEF, NO MATTER HOW DIM THE LIGHT MAY SEEM, THAT SOMEWHERE, THERE IS A WOMAN ON THE BENCH WHO WILL DO WHAT OTHERS HAVE FAILED TO DO: UPHOLD THE LAW IMPARTIALLY, ENFORCE THE CONSTITUTION, AND DEPLOY JUSTICE WITH THE FULL FORCE OF HER OFFICE.

WHILE MANY IN POSITIONS OF POWER HAVE SURRENDERED TO THE DEMANDS OF THOSE WHO SEEK TO BUY, MANIPULATE, AND CONTROL, I HAVE NOT LOST FAITH THAT THERE IS STILL A WOMAN OF INTEGRITY IN THE HALLS OF JUSTICE. ONE WHO UNDERSTANDS THAT HER ROLE IS NOT TO PROTECT THE ELITE, NOT TO SERVE THE

INTERESTS OF THE POWERFUL FEW, BUT TO ENSURE THAT JUSTICE IS SERVED FAIRLY AND EQUALLY TO ALL, REGARDLESS OF THEIR WEALTH, RACE, OR INFLUENCE.

FOR TOO LONG, THE JUDICIARY HAS BEEN HIJACKED BY CORRUPTION, WHERE THE WEALTHY AND THE POWERFUL HOLD SWAY OVER THE LAW, AND THE INNOCENT, ESPECIALLY WOMEN AND CHILDREN, ARE LEFT TO SUFFER IN SILENCE. FOR TOO LONG, WE'VE WATCHED AS THE VOICES OF THE VULNERABLE ARE DROWNED OUT BY THE ELITE WHO MANIPULATE THE SYSTEM TO THEIR ADVANTAGE. BUT I REFUSE TO BELIEVE THAT THIS IS THE FINAL CHAPTER OF OUR JUSTICE SYSTEM. I BELIEVE THAT THERE IS STILL A WOMAN, A JUDGE, WHO HAS THE COURAGE TO STAND UP, SPEAK TRUTH TO POWER, AND REMIND US ALL WHAT THE LAW WAS TRULY MEANT TO DO: PROTECT THE INNOCENT AND PUNISH THE GUILTY.

THIS HOPE IS NOT NAIVE, IT IS GROUNDED IN THE BELIEF THAT JUSTICE IS NOT THE EXCLUSIVE DOMAIN OF THOSE WITH THE DEEPEST POCKETS, BUT A RIGHT ENSHRINED IN THE VERY CONSTITUTION THIS COUNTRY WAS BUILT UPON. AND WHILE SOME MAY SEE THIS HOPE AS FOOLISH, I BELIEVE THAT IT IS PRECISELY THIS HOPE THAT WILL BRING ABOUT THE CHANGE WE SO DESPERATELY NEED. ONE WOMAN, STANDING FIRM IN HER PRINCIPLES, CAN BE THE CATALYST FOR A NEW ERA OF JUSTICE. ONE WOMAN ON THE BENCH, ARMED WITH THE COURAGE TO DO WHAT IS RIGHT, CAN BREAK THE CHAINS OF CORRUPTION AND FORCE THE ENTIRE SYSTEM TO RECKON WITH ITS FAILINGS.

SO, AS I FACE THE OVERWHELMING FORCES OF DARKNESS, I DO NOT LET GO OF THAT HOPE. I DO NOT SUCCUMB TO THE DESPAIR THAT HAS CLAIMED SO MANY OTHERS. FOR I KNOW THAT TRUE JUSTICE IS NOT AN ILLUSION, BUT SOMETHING THAT MUST BE FOUGHT FOR, BY EACH OF US, AND YES, BY THOSE WHO SIT ON THE HIGHEST BENCHES OF THE LAND.

LET THIS BE THE REMINDER: JUSTICE IS NOT JUST FOR THE WEALTHY, THE POWERFUL, OR THE PRIVILEGED. IT IS FOR EVERYONE. AND AS LONG AS THERE IS ONE WOMAN, ONE JUDGE, WHO UNDERSTANDS THAT, I WILL CONTINUE TO BELIEVE THAT JUSTICE, TRUE JUSTICE, CAN BE DONE.

IT IS MY HONOUR AND PROFOUND PLEASURE TO EXPOSE THIS MALICIOUS OBSTRUCTION OF JUSTICE THAT LEADS TO THE ENSLAVEMENT OF GIRLS GLOBALLY WHERE RICH AMERICAN MEN GET ON PLANES TO THAILAND AND BRAZIL TO PAY $20 DOLLARS TO FINGER-FUCK 4 YEAR OLD GIRLS, WHERE WE NOW LIVE IN A SOCIETY WHERE AN 8 YEAR OLD IS REFUSED AN ABORTION FOR THE PREGNANCY CAUSED BY HER UNCLE, FOR THE 12 YEAR OLD GIRL STANDING ON THE HOLLYWOOD STREET CORNER PICKED UP HOUR AFTER HOUR BY YOUR DENTIST AND YOUR LAWYER, VIOLATED FOR 40 DOLLARS AND AN ICE CREAM CONE, FOR THE TEENS RAPED IN LAPD CUSTODY BY OFFICERS ACTING UNDER THE COLOUR OF THE LAW, FOR THE 14 AND 16 YEAR OLDS MOVED ACROSS INTERNATIONAL BORDERS TO BILLIONAIRE PEDOPHILES, FOR THE 18 YEAR OLD DRUGGED AND ENFORCED INTO MAKING ONLINE PORNOGRAPHY THAT CAN NEVER BE ERASED, FOR THE GIRLS SOLD MUTILATED AND MURDERED WHO'S BODIES HAVE YET TO HAVE BEEN RECOVERED. FOR THE GIRLS BEING RAPED BY THEIR FOSTER PARENTS TO KEEP THIS FOSTER PARENTS CHECKS COMING, FOR THE TEENAGE GIRLS LOCKED IN BASEMENT MASSAGE PARLOURS FOR THE SOLE PURPOSE OF JERKING OF THE OLD FARTY DISGUSTING GREASY ODIOUS MALE JUDGES, COPS AND ATTORNEY GENERALS WHO SEEM TO TO HAVE THEIR OWN SEXUAL DEVIANCY TO COVER UP. AND FOR MYSELF WHO HAS NEVER BEEN EMANCIPATED BECAUSE OF FILTHY DIRTY JUDGES ACCEPTING BRIBES FROM PEDOPHILES, WHO ARE FAILING EVERY MEMBER OF SOCIETY.

LET THIS BE THE REMINDER

~ ~ ~ A DECLARATION OF TRUTH, INTEGRITY, AND DEMAND FOR JUSTICE,

LET THIS BE THE REMINDER:

JUSTICE IS NOT THE PRIVILEGE OF THE WEALTHY, THE POWERFUL, OR THE WELL-CONNECTED.

JUSTICE IS THE BIRTHRIGHT OF EVERY HUMAN BEING AND IT MUST BE DELIVERED

IMPARTIALLY, WITHOUT FEAR OR FAVOUR. SO LONG AS THERE REMAINS EVEN ONE WOMAN, ONE JUDGE, ONE HONEST OFFICER OF THE COURT WHO REMEMBERS THEIR OATH AND APPLIES THE LAW WITH INTEGRITY, I WILL CONTINUE TO BELIEVE THAT TRUE JUSTICE AND NOT A MERE PERFORMANCE OF IT …CAN STILL BE DONE.

IT IS MY HONOUR, AND MY MORAL RESPONSIBILITY, TO SPEAK OUT AGAINST THE SYSTEMIC AND ONGOING OBSTRUCTION OF JUSTICE THAT ENABLES THE TRAFFICKING AND EXPLOITATION OF WOMEN AND GIRLS, NOT ONLY INTERNATIONALLY, BUT WITHIN OUR OWN INSTITUTIONS AND JURISDICTIONS.

WE LIVE IN A WORLD WHERE:

- CHILDREN ARE TRAFFICKED ACROSS BORDERS AND EXPLOITED FOR COMMERCIAL SEX, WHILE WEALTHY PERPETRATORS ESCAPE ACCOUNTABILITY, SHIELDED BY PRIVILEGE AND LEGAL PROTECTIONS.

- YOUNG GIRLS, SOME AS YOUNG AS 8 YEARS OLD, ARE DENIED ACCESS TO REPRODUCTIVE HEALTHCARE EVEN IN CASES INVOLVING INCEST AND ASSAULT AND ARE FORCED TO CARRY PREGNANCIES TO TERM AGAINST THEIR WILL.

- ADOLESCENTS ARE EXPLOITED IN MAJOR METROPOLITAN AREAS, WHERE THE BUYERS ARE NOT STRANGERS, BUT RESPECTED MEMBERS OF THE COMMUNITY ˜ DOCTORS, LAWYERS, EDUCATORS, AND PUBLIC OFFICIALS.

- YOUTH IN STATE CUSTODY ARE SUBJECTED TO ABUSE BY LAW ENFORCEMENT, UNDER THE VERY SYSTEMS MEANT TO PROTECT THEM.

- TEENAGERS ARE MOVED ACROSS STATE AND NATIONAL LINES, FORCED INTO SEXUAL SERVICE TO INDIVIDUALS OF GREAT WEALTH AND POLITICAL POWER, WITHOUT INVESTIGATION OR REMEDY.

- YOUNG ADULTS ARE COERCED ˜ THROUGH DRUGS, THREATS, OR MANIPULATION ˜ INTO PRODUCING PORNOGRAPHIC MATERIAL, WHICH THEN CIRCULATES GLOBALLY, CAUSING PERMANENT REPUTATIONAL AND PSYCHOLOGICAL HARM.

- COUNTLESS GIRLS ARE MISSING, MURDERED, OR TRAFFICKED, THEIR CASES UNINVESTIGATED, THEIR STORIES UNACKNOWLEDGED, THEIR FAMILIES LEFT WITHOUT ANSWERS.

- FOSTER YOUTH ARE ABUSED IN PLACEMENTS, WHILE STATE SYSTEMS PRIORITIZE MAINTAINING FUNDING STREAMS OVER ENSURING SAFETY AND DIGNITY.

- UNDOCUMENTED AND MARGINALIZED YOUTH ARE EXPLOITED IN ILLICIT MASSAGE PARLOURS AND UNREGULATED SETTINGS, SERVING CLIENTS WHO HOLD POSITIONS OF PUBLIC TRUST ~ INCLUDING MEMBERS OF THE JUDICIARY, LAW ENFORCEMENT, AND PROSECUTORIAL OFFICES.

WE ALL KNOW THAT DIANE MOIRA DOOLITTLE IS A MINDLESS, RACIST, NEFARIOUS, WICKED, ROTTEN TO THE CORE, FOUL RELENTLESS CRIMINAL WITH A LICENCE TO PRACTICE LAW..... I PLACE THE BLAME WHERE THE BLAME IS DUE ON THE FAILED JUDICIARY AND FAKE ATTORNEY GENERAL ROB BONTA.

THESE ARE NOT ISOLATED INCIDENTS. THIS IS NOT ANECDOTAL.
THIS IS A PATTERN , A SYSTEMIC FAILURE OF JUSTICE, MAINTAINED THROUGH SILENCE, PROTECTED BY POWER, AND ENFORCED BY THOSE CHARGED WITH UPHOLDING THE LAW.

I SAY THIS NOT FOR SHOCK VALUE, BUT BECAUSE THE TRUTH DEMANDS TO BE SPOKEN.
BECAUSE THE LAW IS MEANINGLESS UNLESS IT APPLIES EQUALLY TO THE VULNERABLE AS IT DOES TO THE PRIVILEGED.
BECAUSE GIRLS AND WOMEN, ACROSS BORDERS, BACKGROUNDS, AND AGES, DESERVE PROTECTION, DIGNITY, AND REDRESS.

AND BECAUSE THE JUDICIARY, WHEN SILENT, BECOMES COMPLICIT.
WHEN THE COURTS CLOSE THEIR DOORS TO SURVIVORS, WHEN LAW ENFORCEMENT REFUSES TO INVESTIGATE, WHEN PROSECUTORS DECLINE TO ACT, AND WHEN JUDGES

DISMISS MERITORIOUS CLAIMS TO PROTECT THE REPUTATION OF THE POWERFUL, JUSTICE DIES.

I SPEAK THIS TODAY NOT ONLY FOR MYSELF, BUT FOR EVERY GIRL AND WOMAN WHO HAS ENDURED EXPLOITATION, WHO HAS BEEN DENIED PROTECTION, AND WHO HAS BEEN SILENCED BY SYSTEMS DESIGNED TO SERVE HER.

LET THIS BE THE RECORD.
LET THIS BE THE BEGINNING OF ACCOUNTABILITY.
LET THIS BE THE DAY WE STOP PRETENDING THAT JUSTICE IS BEING SERVED,  AND BEGIN DEMANDING


SIGNED THIS 28TH DAY OF AUGUST 2025

AT LOS ANGELES CALIFORNIA

*Amber Doe*


AMBER DOE